UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

CIVIL ACTION NO. 05-149-C

STEPHEN W. KOEBEL, ET AL., PLAINTIFFS,

V.   **MEMORANDUM OPINION AND ORDER**

SOUTHERN GRAPHIC SYSTEMS, INC.
PENSION PLAN, ET AL., DEFENDANTS.

\* \* \* \* \* \* \* \* \* \*

This motion is before the court on the plaintiffs' motion to reconsider this court's October 12, 2005, order denying their motion for summary judgment (DE 30). The court, having reviewed the record and being otherwise sufficiently advised, will deny the plaintiffs' motion.

The plaintiffs are former employees who were covered by a benefit plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, *et seq.*, ("the Plan"). The plaintiffs brought this action to obtain disability pension benefits that they allege were arbitrarily denied. The plaintiffs filed a motion for summary judgment, which the court denied because the benefits awarded to the plaintiffs were calculated in accordance with the plain, unambiguous meaning of the language of the Plan, and the alleged denial was therefore not arbitrary and capricious. The court further found that the defendants' application of the Plan language contrary to their prior practice did not constitute an amendment, because a plan administrator is not bound by a prior incorrect interpretation of the Plan.

**Legal Analysis**

A motion to reconsider is treated as a motion to alter or amend judgment under Rule 59(e) of the Federal Rules of Civil Procedure. *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 617 (6th Cir. 2002). A Rule 59(e) Motion may be granted where there is a clear error of law, newly discovered evidence, an intervening change of law, or to prevent manifest injustice. *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999).

In their motion for reconsideration, the plaintiffs state that "[t]he issue is not whether the plan language permitted the disability benefit to be 'actuarially' adjusted, but the manner in which the 'actuarial' adjustment was made." *Brief in Support of Plaintiffs' Motion to Reconsider*, at 2 (*"Motion to Reconsider"*). The plaintiffs then argue that the definition of "actuarial equivalent" is ambiguous and that the plan was not properly amended to allow the defendants to apply a new interpretation of the term. The defendants assert that the plaintiffs' motion should be denied as lacking an appropriate basis under Rule 59(e) of the Federal Rules of Civil Procedure and on the merits.

    I.    **The manner in which the actuarial adjustment was made**

The plaintiffs argue that before the defendants changed their practice regarding disability retirement benefits, disability pensions were calculated by first determining the normal retirement benefit, then actuarially adjusting that amount if the participant elected to receive a lump sum distribution rather than monthly payments. At some point, the defendants began using two actuarial adjustments,

adding an adjustment for early retirement.[1] The defendants object to this argument, because it was asserted in the plaintiffs' reply brief to their motion for summary judgment.

In their reply brief to their motion for summary judgment, the plaintiffs asserted that

> [i]n the past, Defendants calculated a disabled participant's benefit in accordance with Section 4.1 of the plan (as clearly required under Section 4.4) and then adjusted the disability benefit by what is now Section 1.2(b). Upon Defendants' recent change in interpretation, the disability benefit is now adjusted twice, both under Section 1.2(a) and also under 1.2(b).

*Plaintiffs' Reply Brief to Motion for Summary Judgment ("MSJ Reply")*, at 4-5. The plaintiffs made precisely the same argument, that is, that the defendants violated ERISA when they changed their policy from making one actuarial adjustment to making two, both in their original motion and in their motion to reconsider.

---

[1] The court notes that the plaintiffs' explanation of how the defendants changed their method of calculating disability retirement benefits is somewhat convoluted. For example, in their motion for reconsideration, the plaintiffs state that the defendants originally "actuarially adjusted the [section 4.1] benefit for payment to a participant. There was just one actuarial adjustment." *Motion to Reconsider*, at 3. Under the new procedure, "[t]he resulting age adjusted benefit was then further reduced by applying a final actuarial calculation. In sum, Defendants applied not just one, but two actuarial calculations to the participant's disability benefit." *Id.* In their original motion for summary judgment, however, the plaintiffs explained to the court that the defendants originally *did not* reduce disability retirement benefits for commencement prior to age 65, and that the defendants applied an actuarial adjustment *only* when the participant elected to receive a lump sum payment. *Plaintiffs' Brief in Support of Motion for Summary Judgment ("MSJ Brief")*, at 4. In any event, the court finds that the defendants' current application of section 4.4 is consistent with sections 4.4 and 1.2, and is not arbitrary and capricious in light of their previous practice.

3

Rearguing is not an appropriate purpose for a motion to reconsider. *Davenport v. Corr. Corp. of Am.*, 2005 U.S. Dist. LEXIS 22666, at *2-3 (Oct. 4, 2005, E.D. Ky.). Therefore, the plaintiffs' assertion that they are not contesting the fact of the actuarial adjustment but instead the manner in which the adjustment was made is rejected.

The defendants also responded to the plaintiffs' argument on the merits. The plan in effect when a benefit decision is made controls. *Hackett v. Xerox Corp. Long-Term Disability Plan*, 315 F.3d 771, 774 (7th Cir. 2003); *Bolton v. Constr. Laborers' Pension Trust*, 56 F.3d 1055, 1058 (9th Cir. 1995). The plaintiffs argue, however, that the previous plans are relevant, because the meaning given by the defendants to any ambiguities contained therein essentially became a term, and a different interpretation would constitute a change in the term.

Where the terms of a plan are unambiguous, no interpretation is necessary, and extrinsic evidence, including past practices, is not admissible to establish their meaning. *Epright v. Envtl. Res. Mgmt., Inc.*, 81 F.3d 335, 339-40 (3d Cir. 1996) (*citing Blau v. Del Monte Corp.*, 748 F.2d 1348, 1353 (9th Cir. 1984)). Consistent misinterpretation of a term "does not mean that such misinterpretation should be deemed part of the Plan and sanctioned as lawful." *Id.* at 340; *see also Foley v. Int'l Bhd. Elec. Workers Local Union 98*, 271 F.3d 551, 558 (3d Cir. 2001) (district court erred in requiring administrator to follow past "poor administrative practices"). The terms governing the calculation of disability retirement benefits are and were previously unambiguous. Section 4.4 of the Plan has always required an actuarial

4

adjustment for early retirement; the fact that the defendants previously neglected to apply the section 1.2(a) adjustment for non-lump sum calculations does not require them to continue that error.

Furthermore, as discussed below, the manner in which the defendants calculated the actuarial equivalents due to the plaintiffs was consistent with the plain language of the Plan and therefore was not arbitrary and capricious. The term "Actuarial Equivalent" was not ambiguous in the 2001 or any preceding Plan document, and the historical misapplication of the provision did not preclude the defendants from correcting the error.

## II. Ambiguity of the term "Actuarial Equivalent"

An employee who reaches normal retirement age receives benefits

> equal to (a) less the sum of (b) plus (c), where
>    (a)   is one and five-sixths percent (1-5/6%) times the Participant's Final Average Compensation times the Participant's years of Benefit Service to a maximum of thirty (30) such Years;
>    (b)   is one and two-thirds percent (1-2/3% times the Participant's Primary Social Security Benefit times the Participant's Years of Benefit Service to a maximum of thirty (30) such Years; and
>    (c)   is the Participant's GCIU Benefit, if any.

Plan, § 4.1.

Disability retirement benefits are

> *the Actuarial Equivalent*, determined as of the first day of the month which includes the last day he was actively at work with the Employer, of a benefit calculated in accordance with Section 4.1 based on (i) his Final Average Compensation at the time the Disability was incurred and (ii) his Years of Benefit Service as of the time the Disability

5

was incurred.

Plan, §4.4 (emphasis added).  Section 1.2 of the Plan defines "Actuarial Equivalent" as

> (a) for purposes *other than the determination of lump sum present values*, a benefit of equivalent value determined on the basis of seven and one-half percent (7.5%) interest compounded annually and the 1971 Group Annuity Table for males projected by Scale E with a one (1) year set back….
> (b) for purposes of determining lump sum present values, a benefit of equivalent value determined on the basis of the annual rate of interest on thirty-year Treasury securities for the second month preceding the month in which such lump sum is calculated, and the mortality table prescribed by the Secretary of the Treasury on the basis of the prevailing commissioners' standard table (as described in Section 807(d)(5)(A) of the Code) used to determine reserves for group annuity contracts issued on the date as of which present value is being determined (without regard to any other subparagraph of Section 807(d)(5) of the Code).

Plan, § 1.2 (emphasis added).  Section 1.2 previously defined "Actuarial Equivalent" as

> a benefit of equal value to the benefit that would otherwise have been provided, computed on the basis of seven and one-half percent (7.5%) interest compounded annually and the 1971 Group Annuity Table for males projected by scale E to 1976 with a one (1) year age set back.  The interest rate for benefits computed under Section 5.6 shall be seven and one-half percent (7.5%).  The interest rate for determining *all other lump sum payments* shall be eight percent (8%).  Notwithstanding the above, the interest rate used for determining lump sum equivalents shall not be greater than the rate used by the Pension Benefit Guaranty Corporation as of the proposed distribution (or benefit commencement) date.

*See, e.g.,* 1993 Plan, § 1.2 (emphasis added).[2]

The plaintiffs argue that under previous Plan documents, the defendants *exercised discretion* to interpret the provision for computing the actuarial equivalent when they determined which sentence in section 1.2 applied to disability retirement benefit calculations. The plaintiffs claim that the defendants initially applied only the adjustment described under the current section 1.2(b) for lump sum awards, but later altered their interpretation and began applying both subsections (a) and (b) to disability retirement calculations:

> The disability retirement benefit was not reduced for commencement prior to age sixty-five (65). The only actuarial adjustment performed would have been if a participant elected to receive the disability retirement benefit in a lump sum. The Plan has consistently held that the disability retirement benefit was equal to the normal retirement benefit.

*MSJ Brief*, at 4-5.

No version of section 4.4 specifies which portion of section 1.2 is applicable, and section 1.2 is silent as to its application to disability retirement benefits. Because of this omission, the plaintiffs contend, the provision is ambiguous, and the defendants had no choice but to exercise their discretion to decide how section 1.2 affected disability retirement benefits.

The plaintiffs made the same argument in the reply to their original motion

---

[2] Section 5.6 authorized payment of a lump sum where monthly benefit payments were below $25.00 and the lump sum amount was less than $3,500.00. *See, e.g.,* 1993 Plan, § 5.6(a).

for summary judgment, in which they argued that the "Defendants have consistently interpreted ["Actuarial Equivalent"] with respect to the disability benefit," and the defendants had been required to exercise discretion to determine which sentence to apply. *MSJ Reply*, at 4-5. Because the plaintiffs made the same argument in the original motion, it is not proper grounds for reconsideration. *Davenport*, 2005 U.S. Dist. LEXIS 22666, at *2-3.

Furthermore, the court's previous determination that the Plan is unambiguous and that the defendants' previous interpretation of the provisions relating to disability retirement benefits was inconsistent with the terms of the Plan is not an error of law. The plaintiffs argue that section 1.2 of the old Plan documents seemed to refer only to lump sum calculations, and the defendants, exercising their discretion to interpret the Plan and decide how non-lump sum payments were calculated, did not apply a section 1.2 actuarial adjustment to non-lump sum awards. Under any version of the Plan, however, section 4.4 indicates that *all* disability pensions are subject to an actuarial adjustment, which is defined in section 1.2.

Although the earlier versions of section 1.2 did not specify that the first sentence pertained to non-lump sum distributions, that intention was clear. The phrase "all other lump sum payments" in the third sentence of the old section 1.2 served to differentiate calculations under that subsection from those under section 5.6, not, as the plaintiffs argue, as opposed to calculations made under the first sentence of section 1.2. Thus, the first sentence appeared to have general

8

application; sentence two applied to small lump sum payments; and sentence three applied to "all other lump sum payments." The defendants' previous failure to apply the sentence one adjustment to disability retirement benefit calculations was a mistake, not a discretionary choice among alternative interpretations of an ambiguous term.

### III.   Amendment Requirement

In their motion for reconsideration, the plaintiffs refer to the summary plan description ("SPD") that was issued after the Plan was amended to conform with ERISA. Regarding disability benefits, the SPD explained:

> The monthly disability benefit payable shall be an amount equal to the monthly pension that you have accrued as of the first day of the month immediately preceding the last day you were actively at work for the Employer.
>
> ....[Y]our disability benefits will cease on your Normal Retirement Date, at which time you will start receiving your Normal Retirement Benefit, which will be in the same amount.

SPD, at 11. The plaintiffs argue that the language in the SPD clearly states that disability retirement benefits are not reduced for early retirement and are the same as normal retirement benefits, and therefore the defendants were required to amend the Plan language before applying such an adjustment. It follows, the plaintiffs urge, that "[i]f Defendants did not properly amend the plan to decrease the disability benefit payable, then Plaintiffs are entitled to have the Court apply the prior rule as stated in the summary plan description." *Motion to Reconsider,* at 11.

In support of their original motion for summary judgment, the plaintiffs relied

9

partially on the fact that the defendants never notified the Plan participants of an amendment to the disability benefits provision via an SPD.[3] The plaintiffs did not argue, as they appear to do in the instant motion, that the language in the SPD was binding on the defendants.  A Rule 59(e) motion is not an appropriate instrument for raising an argument that could have been but was not raised before judgment was issued.  *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998).  Therefore, the court rejects this argument on reconsideration.  Accordingly,

**IT IS ORDERED** that the plaintiffs' motion to reconsider the court's October 12, 2005, order denying the plaintiffs' motion for summary judgment (DE 30) is **DENIED**.

Signed on   January 30, 2006

      **Jennifer B. Coffman, Judge**
      **United States District Court**

---

[3] The plaintiffs did state in their original motion that "a plan fiduciary may not enforce a qualification on eligibility for benefits that the summary of the plan failed to disclose."  *MSJ Brief*, at 15.  However, the plaintiffs did not discuss this argument.

10